LEE, C.J.,
for the Court:
FACTS AND PROCEDURAL HISTORY
¶ 1. This case involves the aftermath of a contentious divorce and the recusal of the chancellor who presided over the lengthy proceedings.
¶ 2. On May 12, 2004, Judge Edwin Roberts of the Marshall County Chancery Court granted Grace Bonds Boatwright and Toulman D. Boatwright Jr. a divorce on the ground of irreconcilable differences. Grace was awarded primary physical custody of the couple’s three minor children, Wynne, Hannah, and Dunn. Toulman was ordered to pay $320 per month in child support, as well as $80 per month for health insurance, one-half of the out-of-pocket medical expenses, and a portion of the children’s school tuition. Toulman was also ordered to maintain a life-insurance *778 policy with the three children as beneficiaries.
¶ 3. Since the divorce decree, the relationship between Grace and Toulman has deteriorated such that the parties have been unwilling to communicate, resulting in the filing of numerous motions and petitions over the years.
. ¶ 4. The instant case stems from a petition for contempt and modification filed by Grace on October 19, 2007. An agreed temporary order was entered that, among other things, gave Toulman additional visitation with Hannah and appointed Jennifer Shackelford as guardian ad litem (GAL) for the children. On May 20, 2008, Grace filed a motion for emergency relief alleging that recordings between Toulman and Hannah, who was sixteen years old at the time, evidenced that Toulman’s visitation with his minor children should be restricted. These recordings indicate a desire on Toulman’s behalf and a willingness on Hannah’s behalf that Hannah engage in violent activities against Grace and her older sister, Wynne. Judge Roberts subsequently suspended Toulman’s visitation with Dunn, who was approximately five years old at that time. The day after Grace filed her motion for emergency relief, L. Anne Jackson, Toulman’s counsel since November 2007, filed a motion to withdraw as counsel. On May 23, 2008, Helen Kennedy Robinson was substituted as Toulman’s counsel.
¶ 5. At some point after this, Hannah went to live with her paternal grandparents. Per Toulman’s request, Judge Roberts entered a temporary order allowing Toulman to pay Hannah’s portion of his child-support payment to the paternal grandparents.
¶ 6. On October 6, 2008, Toulman filed a motion for Judge Roberts to recuse. In response, Grace filed a counter-motion for sanctions. After a hearing on the matter, Judge Roberts took the matter under advisement. On October 28, 2008, Judge Roberts denied Toulman’s motion to re-cuse, delivering a lengthy opinion in which he found that Toulman was unable to substantiate any of the allegations made in support of his motion. It was determined that Grace’s motion for sanctions would be heard at a later date. Toulman subsequently filed a petition with the Mississippi Supreme Court to review the denial of his motion to recuse. The supreme court denied Toulman’s petition by order dated December 10, 2008.
¶ 7. A hearing on the merits of all pending motions and petitions was held for three days in mid-February 2009. Judge Roberts heard Grace’s motion for sanctions on March 10, 2009, and ultimately awarded Grace $4,305 in attorneys’ fees and $733.11 in expenses. -Toulman was also ordered to pay $900 to Shackelford, the GAL, for a total of $5,938.11. The order imposing sanctions was executed on April 14, 2009, nunc pro tunc to March 10, 2009.
¶ 8. In regard to the original petition for contempt and modification filed by Grace, Judge Roberts found Toulman to be in contempt and ordered him to pay a fine for each instance of contempt. Judge Roberts also ordered Toulman to pay Grace’s attorneys’ fees in regard to the contempt proceeding, but he further directed a writ of inquiry to determine the amount of attorneys’ fees attributed to the contempt action. Judge Roberts further found that it was in Hannah’s best interest to remain living with her paternal grandparents until the end of the school year. Judge Roberts also set visitation, ordered the parties to attend counseling sessions, and modified the child support. This order was executed on April 9, 2009, nunc pro tunc to March 10, 2009. However, Judge Roberts determined that issues regarding Hannah *779 and her custody, visitation, and support were temporary and would be reviewed on August 14, 2009.
¶ 9. On the morning of April 9, 2009, the parties presented for the scheduled writ of inquiry regarding attorneys’ fees. Toul-man’s attorney, Robinson, requested a conference in chambers, wherein she informed Judge Roberts that she had received information which required her to file another motion to recuse. The issue of attorneys’ fees was never resolved. On April 16, 2009, Judge Roberts granted Toulman’s motion to file a sealed motion to recuse. That same day, Toulman filed a motion to alter or amend or for a new trial based on newly discovered evidence. Robinson had discovered that Judge Roberts had gone turkey hunting with one of Grace’s attorneys, Kent Smith, on April 8, 2009. Grace’s other attorney is Kent Smith’s wife, Amanda Whaley Smith.
¶ 10. On April 20, 2009, Judge Roberts, on his own motion, recused himself from the case. The case was then assigned to Judge Glenn Alderson, who conducted a hearing on Toulman’s motion for a new trial. Judge Alderson decided that rather than conduct a new trial on the merits, the most economical decision would be for the parties to appeal and allow the appellate court to determine whether there was any wrongdoing. Judge Alderson ultimately denied the motion.
¶ 11. Toulman now appeals, asserting the following issues: (1) Judge Alderson erred in denying his motion for a new trial; (2) Judge Roberts erred in refusing to recuse himself; (3) Judge Roberts erred in failing to disclose his personal relationship with Kent Smith; (4) Judge Roberts erred in sanctioning him for filing a motion for recusal; (5) Judge Roberts erred in refusing to order that Toulman be reimbursed money paid for Hannah’s benefit when she was living with her paternal grandparents; (6) Judge Roberts erred in holding him in contempt for failing to pay certain expenses of Wynne; (7) Judge Roberts erred in ordering him to pay a fine; (8) Judge Roberts erred in ordering him to continue supporting Wynne; (9) Judge Roberts erred in ordering him to pay attorneys’ fees in regard to being found in contempt; and (10) Judge Roberts’s rulings were the result of bias against him. Finding reversible error in regard to Issue I, we reverse and remand.
DISCUSSION
¶ 12. During the hearing on Toulman’s motion to alter or amend or for a new trial, Judge Alderson stated the following: “There is no way that I can do equity to [Toulman] or [Grace] with no more than I know about this case. The only way that I could do equity or do justice to them would be to completely start anew.” Judge Ald-erson also admitted that “it would be impossible” for him to rule on any pending issues regarding Hannah’s custody and support without knowing anything about the case. Judge Alderson further stated that he would be unable to “set attorneys’ fees without ... going back and completely reviewing this whole thing. Having it transcribed, looking at it, and seeing so that [he could] know how to set attorneys’ fees to see if the proof that’s been put on [is] sufficient ...”
¶ 13. Rule 63(b) of the Mississippi Rules of Civil Procedure states:
If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned, or after the hearing of a non-jury action, then any other judge regularly sitting in or assigned under law to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those *780 duties, he may in his discretion grant a new trial.
(Emphasis added). Judge Alderson acknowledged that he was unprepared to hear the motion for a new trial and thought the better course of action would be for the parties to appeal. We find that Judge Alderson abused his discretion as he failed to make a proper review of the record and hearings before ruling on the motion to alter or amend or for a new trial. Rather than reverse and remand for a new trial, we find the better course of action would be for Judge Alderson to obtain a transcript of the record to review and see if a new trial is necessary. See Miss. Att’y Gen. Op. No. 11-00011, Davis, 2011 WL 1500830, (Mar. 11, 2011). At that point Judge Alderson shall determine whether Judge Roberts should have recused earlier and, if so, require a new trial. Judge Alderson may otherwise conclude that Judge Roberts’s rulings do not reflect an appearance of impropriety and, therefore, determine that a new trial is not warranted. Reviewing thé entire record will further assist Judge Alderson in determining any pending issues or motions, especially regarding Hannah’s custody and support.
¶ 14. Thus, we reverse and remand for proceedings consistent with this opinion.
¶ 15. THE JUDGMENT OF THE MARSHALL COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
MYERS AND ISHEE, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY IRVING, P.J. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CARLTON, J. BARNES, ROBERTS AND MAXWELL, JJ., NOT PARTICIPATING.