# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01801-COA

BRADLEY KABAT NURKIN

APPELLANT/CROSS-APPELLEE

v.

EVA CAROLINE PARKMAN NURKIN

APPELLEE/CROSS-APPELLANT

DATE OF JUDGMENT: 09/20/2013
TRIAL JUDGE: HON. JOHNNY LEE WILLIAMS
COURT FROM WHICH APPEALED: FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT: S. CHRISTOPHER FARRIS
ATTORNEYS FOR APPELLEE: SHAWN M. LOWREY
ERIK M. LOWREY
NATURE OF THE CASE: CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION: GRANTED APPELLEE'S MOTION TO
MODIFY VISITATION
DISPOSITION: AFFIRMED IN PART, REVERSED AND
RENDERED IN PART, AND VACATED IN
PART ON DIRECT APPEAL; AND
AFFIRMED ON CROSS-APPEAL -
04/07/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

BEFORE LEE, C.J., BARNES AND MAXWELL, JJ.

LEE, C.J., FOR THE COURT:

FACTS AND PROCEDURAL HISTORY

¶1. Bradley Kabat Nurkin (Brad) and Eva Caroline Nurkin (Caroline) were divorced in Tennessee in 2011. Caroline was granted custody of the couple's minor son, Jake, who was born in 2003. Eventually both parties relocated. Caroline and Jake moved to Hattiesburg,

Mississippi, and Brad moved to Gainesville, Georgia.

¶2. On November 14, 2012, Caroline filed a petition in the Forrest County Chancery Court seeking a modification of Jake's visitation schedule. Caroline then filed an amended petition, asking for Brad to be held in contempt for his failure to reimburse her for Jake's medical expenses and for a reconsideration of child support. Brad filed a motion to dismiss Caroline's petitions, arguing lack of subject-matter and personal jurisdiction. The chancellor issued an order retaining jurisdiction over the modification issue, but dismissing Caroline's contempt and child-support claims.

¶3. After a hearing, the chancellor issued a judgment on September 20, 2013, modifying Jake's visitation schedule. Both parties filed post-trial motions, which the chancellor dismissed. Brad filed his notice of appeal on October 21, 2013. On November 22, 2013, Brad filed a motion for contempt and asked the chancellor to clarify his judgment. On December 16, 2013, the chancellor issued an opinion that clarified his previous judgment. Brad then filed an amended notice of appeal.

¶4. In his appeal, Brad argues that the chancellor: (1) did not have jurisdiction to modify the Tennessee judgment; (2) erred by modifying visitation; (3) erred by restricting him from flying Jake in a private plane; (4) erred by denying his motion for clarification; and (5) erred by modifying the first judgment after a notice of appeal had been filed.

¶5. Caroline filed a cross-appeal, arguing the chancellor should not have dismissed her request to modify child support.

## STANDARD OF REVIEW

2

¶6. In domestic-relations cases, including cases involving visitation, we "will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]" *Rolison v. Rolison*, 105 So. 3d 1136, 1137 (¶4) (Miss. Ct. App. 2012) (citations and quotations omitted). We review questions of law, including jurisdictional issues, de novo. *Shadden v. Shadden*, 11 So. 3d 761, 762 (¶7) (Miss. Ct. App. 2009).

DISCUSSION

I.    JURISDICTION

¶7. In his first issue on appeal, Brad contends that pursuant to the Uniform Interstate Family Support Act (UIFSA), the chancellor did not have jurisdiction to modify the Tennessee judgment that set the visitation schedule. The UIFSA does govern actions concerning child support. *See* Miss. Code Ann. §§ 93-25-1 to -117 (Rev. 2013). The chancellor recognized this and determined that he did not have jurisdiction over Caroline's child-support claim. *See* Miss. Code Ann. § 93-25-101(1)(a) (Rev. 2013).

¶8. However, child-custody proceedings, including those involving visitation, fall under the jurisdiction of the Uniform Child Custody Jurisdiction and Enforcement Act, not the UIFSA. *See* Miss. Code Ann. § 93-27-102(d) (Rev. 2013). In this instance, jurisdiction over the visitation claim was proper in Mississippi because the chancellor had jurisdiction to make an initial determination, and no one involved lived in Tennessee. Miss. Code Ann. § 93-27-203(b) (Rev. 2013). This issue is without merit.

II.    MODIFICATION

3

¶9. Brad argues that the chancellor lacked sufficient evidence to modify visitation. In order to modify a visitation schedule, "[a]ll that need be shown is that there is a prior decree providing for reasonable visitation rights [that is not] working[,] and that it is in the best interest[] of the child[]. . . ." *Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986).

¶10. The original judgment gave Brad visitation with Jake a minimum of eighty days per year, with sixty of those days to be exercised during the summer. Caroline produced evidence that: Jake suffered from autism spectrum disorder, which caused developmental problems regarding his speech and social skills; he needs routine and stability in order to function; he is on a special diet; he sees a speech therapist twice a week and a behavioral therapist once every two weeks; Jake had not been receiving therapy during his summertime visits with Brad; there were problems with Jake's homework during his visitation with Brad; and the current visitation schedule was not fixed and therefore too unpredictable for Jake's needs.

¶11. The chancellor set a fixed visitation schedule during the summer and one weekend a month during the school year so as to create a predictable routine for Jake and to avoid unnecessary school absences. We find that the chancellor's ruling was supported by substantial evidence and not manifestly wrong.

### III. VISITATION RESTRICTIONS

¶12. Brad further argues that the chancellor erred by restricting Brad from flying Jake in a private airplane during his visitation. The chancellor ordered that Jake is prohibited from flying on a private plane, whether Brad or another individual was the pilot. However, the

chancellor further ordered that Jake could ride in a car operated by a licensed driver, or accompany a parent on a commercial plane or train.

¶13. Brad cites to *Mord v. Peters*, 571 So. 2d 981 (Miss. 1990), to support his position. In *Mord*, the chancellor restricted the father's ability to fly his children in his private plane. *Id.* at 983. The Mississippi Supreme Court reversed the chancellor's decision and found that absent any showing that flying with the father would be dangerous or that the father was acting without concern for the children's well being, neither the mother nor the chancellor had the right to restrict the children's activities during visitation with their father. *Id.* at 984-85. In this instance, there was no testimony other than Caroline's unfounded fears that Brad's operation of a plane would endanger Jake's life. As the supreme court stated in *Mord*, "Were we to affirm the chancellor's position . . . endless litigation possibly would result. We can imagine custodial parents coming to court based on unjustified fears and apprehensions and attempt[ing] to prohibit their children from learning how to drive, fish, hunt[,] or swim when a non-custodial parent is exercising his . . . visitation." *Id.* at 986. Furthermore, Brad testified that Jake enjoyed flying with him. There was no testimony that Jake was scared or anxious when flying.

¶14. "A non-custodial parent may determine which extra[]curricular activities the child participates in during visitation, including certain activities of which the custodial parent disapproves." *Givens v. Nicholson*, 878 So. 2d 1073, 1076 (¶14) (Miss. Ct. App. 2004). Finding the chancellor's decision erroneous, we reverse and render on this issue.

IV. MOTION TO CLARIFY

5

¶15.    After the chancellor issued his judgment, Brad filed a motion pursuant to Mississippi Rule of Civil Procedure 60(a) asking the chancellor to clarify his original judgment and specify which weekend Brad was entitled to exercise his visitation.  The chancellor denied this motion.  Rule 60(a) applies to "clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission. . . ."  In his motion, Brad did not allege that there were clerical errors in the judgment.  Brad's motion was in actuality a request to alter or amend the judgment.  Mississippi Rule of Civil Procedure 59(e) governs these requests and requires that the motion be filed no later than ten days after the entry of a judgment.  Since Brad's motion was filed more than ten days after the final judgment, we find no error by the chancellor in denying it.

## V.    MODIFICATION OF JUDGMENT

¶16.    Brad contends that the chancellor did not have jurisdiction to modify the original judgment while the appeal was pending.  As previously stated, the chancellor entered the order modifying visitation on September 20, 2013.  Brad then filed a notice of appeal on October 21, 2013, which was the day his post-trial motion was denied.  On November 22, 2013, Brad filed his motion for contempt asking for clarification regarding his weekend visitation schedule.  On December 16, 2013, the chancellor modified the judgment and clarified Brad's weekend visitation.  The chancellor also awarded Brad one extra monthly visitation if it occurred in Hattiesburg.  Brad now argues that the chancellor did not have jurisdiction to modify the original judgment while it was on appeal.  We note that Brad sought clarification of his visitation schedule, and after receiving extra visitation, he is now

6

arguing that the chancellor had no jurisdiction to order the extra visitation while the appeal was pending.

¶17.   The supreme court has held that ordinarily the filing of a notice of appeal transfers jurisdiction of a matter from the lower court to the appellate court, and the lower court no longer has the authority to amend, modify, or reconsider its judgment. *McNeese v. McNeese*, 129 So. 3d 125, 128 (¶7) (Miss. 2013).  If an appeal has no supersedeas bond, as in this case, a party may execute on the judgment, but the lower court cannot "broaden, amend, modify, vacate, clarify, or rehear the decree." *McNeil v. Hester*, 753 So. 2d 1057, 1076 (¶68) (Miss. 2000).  In *McNeese*, the supreme court held that an agreed order entered by a chancellor while an appeal was pending "merely specified how the previous [j]udgment of [d]ivorce should be satisfied. . . . [It] did not broaden, amend, modify, vacate, or clarify the judgment through the [a]greed [o]rder." *McNeese*, 129 So. 3d at 129 (¶12).  However, in this case, the chancellor modified the original judgment by awarding Brad extra visitation with Jake. Consequently, the order entered December 16, 2013, is void and must be vacated.

VI.   CROSS-APPEAL

¶18.   On cross-appeal, Caroline argues that the chancellor should not have dismissed her request to modify child support. Although Caroline recognizes the applicability of the UIFSA to matters involving child support, she would have this Court disregard the jurisdictional requirements of the UIFSA and require the chancellor to hear the request.  Caroline could have avoided this problem by taking the appropriate steps under the UIFSA to ensure the chancery court had jurisdiction, first by registering the Tennessee judgment in Mississippi.

Miss. Code Ann. § 93-25-83 (Rev. 2013). Regardless, it is not within this Court's power to disregard jurisdictional requirements set forth by our Legislature.

¶19. **THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED IN PART, REVERSED AND RENDERED IN PART, AND VACATED IN PART ON DIRECT APPEAL, AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE PARTIES.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART.**